IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ohio Security Insurance Company, | ) | Civil Action No.   3:23-cv-02635-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Complaint for Declaratory Judgment** |
| Hurricane Construction, Inc. and Ricky Brown, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, Ohio Security Insurance Company ("Ohio Security"), hereby states the following as its Complaint for Declaratory Judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, and S.C. Code Ann. § 15-53-10, et seq.

## NATURE OF THE CLAIM

1. This action seeks a declaratory judgment that the indemnification obligation and/or liability of Ohio Security for the default judgment entered in the case of *Ricky Brown v. Jahmez Abram-Eli Daney and Hurricane Construction, Inc.*, Civil Action No. 2021-CP-31-00272 (South Carolina Court of Common Pleas for Lee County) ("Underlying Lawsuit") in favor of Ricky Brown ("Brown") and against Hurricane Construction, Inc. ("Hurricane") is limited to the statutory minimum limit of $25,000.00, due to Ohio Security being substantially prejudiced by the lack of any actual notice to Ohio Security of the following: the filing of the Underlying Lawsuit; the service of the Underlying Lawsuit on Hurricane; Hurricane's failure to answer or defend the Underlying lawsuit and the resulting entry of default against Hurricane; and/or the holding of an

1

undefended damages hearing in the Underlying lawsuit resulting in the entry of a default judgment in the amount of $3,800,000 against Hurricane.

## PARTIES

2. Ohio Security is a corporation organized and existing under the laws of the State of Wisconsin and maintains its principal place of business in the Commonwealth of Massachusetts.

3. Upon information and belief, Brown is a citizen and resident of Lee County, South Carolina.

4. Upon information and belief, Hurricane is a corporation organized and existing under the laws of the State of South Carolina and maintains its principal place of business in West Columbia, South Carolina.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 based on the limits of liability of the insurance policy at issue.

6. This Court has personal jurisdiction over the Defendants. The facts and circumstances giving rise to the claim occurred in South Carolina and the insurance policy at issue was issued to a business operating in South Carolina and is governed by South Carolina law.

7. Venue in this district is proper under 28 U.S.C. §§ 121(2) and 1391(b)(1)–(2) and because a Defendant resides in this district and events giving rise to the claim occurred in this district.

## BACKGROUND

8. Ohio Security issued a Business Auto Policy to the named insured Hurricane, Policy Number BAS (19) 56 29 59 41 with a liability limit of $1,000,000 per accident covering

the policy period of July 22, 2018 to July 22, 2019 (the "Policy"). A copy of the relevant portions of the Policy is attached as **Exhibit A**.[1]

9.  The Policy contains the following provisions in Section IV – Business Auto Conditions:

> **A. Loss Conditions**
>
> . . .
>
> **2.  Duties In The Event of Accident, Claim, Suit Or Loss**
>
> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> a.  In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>
>  (1) How, when and where the "accident" or "loss" occurred;
>
>  (2) The "insured's" name and address; and
>
>  (3) To the extent possible, the names and addresses of any injured persons or witnesses.
>
> b.  Additionally, you and any other involved "insured" must:
>
>  (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
>
>  (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
>
>  (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
>
>  (4) Authorize us to obtain medical records or other pertinent information.

---

[1] The combined full Policy and endorsements is around 366 pages. The exhibit includes the portions of the Policy that are relevant to this action.

          (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

10. On April 29, 2019, a motor vehicle accident occurred in or near Hartsville, South Carolina involving a vehicle operated by Darvin Sweetenburg ("Sweetenburg") and a vehicle operated by Jahmez Daney ("Daney") (the "Accident"). Brown asserts that, at the time of the Accident, he was a passenger in Sweetenburg's vehicle. The vehicle that Daney was operating at the time of the Accident qualified as a covered auto under the Policy.

11. On April 29, 2019, Ohio Security was informed of the Accident and assigned a liability adjustor to the claim.

12. On May 21, 2019, Ohio Security received a letter from Paul V. Cannarella, Attorney at Law ("Cannarella"), informing Ohio Security that Cannarella's office represented Brown with regard to the Accident and specifically designating Cannarella's employee Mike Ray ("Ray") as the person in his office to whom Ohio Security should direct its communications regarding this claim.

13. Upon information and belief, Cannarella did represent Brown as his attorney with regard to the Accident as of at least May 21, 2019, and has continued to do so to the present day.

14. Cannarella's representation letter has never been withdrawn or modified.

15. Later on May 21, 2019, a Ohio Security representative responded to the letter from Cannarella acknowledging his representation of Brown and requesting information about his injuries and providing information releases to be provided by Brown to allow Ohio Security to obtain any relevant medical and/or employment records. The requested information and information release forms were never provided to Ohio Security.

5

16. On June 25, 2019, an Ohio Security representative spoke with Cannarella (or Ray) about Brown's condition and treatment, but Ohio Security was not provided with any records establishing any injuries.

17. On August 8, 2019, Ohio Security sent a letter to Cannarella informing him of a change in the adjuster handling Brown's claim, the contact information for that adjuster, and, again requesting information on Brown's injuries and treatment.

18. On September 23, 2019, October 21, 2019, November 13, 2019, and December 12, 2019, a representative of Ohio Security called and spoke with Ray seeking information about Brown's injuries and treatment, and requesting a settlement demand. While Ray verbally described various injuries to Brown, no documentation as to any injuries was provided to Ohio Security, nor did Ray provide any of the basic identifying information as to Brown, or any identification of Brown's care providers and the requested release to allow Ohio Security to request information itself. Additionally, no settlement demand was provided.

19. A representative of Ohio Security communicated with Ray (either via email, telephone conversation, or voicemail) on January 17, 2020 (email), February 17, 2020 (both email and telephone conversation), and March 18, 2020 (both email and voicemail) requesting information on Brown's injuries and treatment.

20. On April 14, 2020, a representative of Ohio Security left a voicemail for Ray and then sent him an email seeking any information as to Brown's injuries and treatment. Ray responded via email that he would get a settlement demand to Ohio Security as to Brown's claim within 7 to 10 days. Ohio Security never received any of the requested records regarding Brown's injuries and/or treatment, and never received a settlement demand for Brown's claim.

21.     A representative of Ohio Security communicated with Ray (either via email, telephone conversation, or voicemail) on May 5, 2020 (telephone conversation), June 4, 2020 (telephone conversation and email), July 6, 2020 (telephone message and email), August 4, 2020 (telephone message and email), September 3, 2020 (email), October 9, 2020 (telephone conversation), November 18, 2020 (voicemail and email), December 20, 2020 (telephone conversation), January 28, 2021 (email), February 24, 2021 (telephone conversation), March 25, 2021 (email), April 27, 2021 (email), May 27, 2021 (telephone conversation), July 6, 2021 (email), September 12, 2021 (email), and October 21, 2021 (email).  In each of these communications, Ohio Security repeated its request for any records/documentation supporting Brown's injuries/treatment and for a settlement demand.  Ohio Security never received any of the requested records regarding Brown's injuries and/or treatment, and never received a settlement demand for Brown's claim.

22.     On November 4, 2021, Ohio Security sent a letter to Cannarella informing him of a change in the adjuster handling Brown's claim.

23.     On November 18, 2021, a representative of Ohio Security had a telephone conversation with Ray wherein Ray indicated that he would send Ohio Security a settlement demand as to Brown's claim within 7 to 10 days.  Ohio Security never received any of the requested records regarding Brown's injuries and/or treatment, and never received a settlement demand for Brown's claim.

24.     On November 29, 2021, Brown filed the Underlying Lawsuit against Hurricane and Daney.

25.     Brown's attorney, as identified in the Underlying Lawsuit's Complaint was Cody T. Mitchell of the law firm of Lucas, Warr, White & Mitchell ("Mitchell").

26. Upon information and belief, while Cannarella was not identified as Brown's counsel in the Underlying Lawsuit's Complaint, he continued to also represent Brown with regard to Brown's claim arising from the lawsuit. From this point on, "Brown's counsel" shall refer to either Cannarella (including Ray) and/or Mitchell, individually and collectively.

27. Upon information and belief, at the time that he became involved in this matter, Mitchell was aware of Cannarella's (including Ray's) involvement in this matter as an attorney representing Brown.

28. Despite having been in contact with Ohio Security regarding Brown's claim since May 21, 2019, and despite at least thirty-six (36) separate communications from Ohio Security requesting information and/or a settlement demand during that time, Brown's counsel did not provide Ohio Security with a copy of the filed Complaint, nor did they otherwise inform Ohio Security that the Underlying Lawsuit had been filed.

29. On or about February 24, 2022, Hurricane is alleged to have been served with the Summons and Complaint in the Underlying Lawsuit via service by mail upon its registered agent for service of process.

30. Daney was never served with the Summons and Complaint in the Underlying Lawsuit.

31. Hurricane did not notify Ohio Security that it had been served with the Summons and Complaint in the Underlying Lawsuit nor did Hurricane provide Ohio Security with copies of any legal papers that had been served upon it with regard to the Underlying Lawsuit.

32. At that time (February 24, 2022), Brown's counsel did not notify Ohio Security that the Underlying Lawsuit had been filed or that Hurricane had been served with the Summons and Complaint in the Underlying Lawsuit.

33. Hurricane did not timely file an Answer or any other responsive pleading to the Summons and Complaint in the Underlying Lawsuit.

34. On March 31, 2022, a representative of Ohio Security left a voicemail for Ray. Ray did not respond to that voicemail, nor did he inform Ohio Security of the filing of the Underlying Lawsuit or its service upon Hurricane.

35. On April 11, 2022, Brown's counsel filed an Affidavit of Service as to Hurricane in the Underlying Lawsuit. At that time Brown's counsel did not inform Ohio Security of this filing.

36. On April 12, 2022, Brown's counsel filed a motion for the entry of default against Hurricane in the Underlying Lawsuit. At that time Brown's counsel did not inform Ohio Security of this filing.

37. On May 11, 2022, Brown's counsel filed a second motion for entry of default against Hurricane in the Underlying Lawsuit. At that time Brown's counsel did not inform Ohio Security of this filing.

38. Later on May 11, 2022, an Order on entry of default was entered against Hurricane in the underlying Lawsuit. At that time Brown's counsel did not inform Ohio Security of this filing.

39. On May 20, 2022, a representative of Ohio Security had a telephone conversation with Ray regarding the status of Brown's claim and settlement demand. Ray asked Ohio Security to make this inquiry in an email, and the Ohio Security representative immediately sent an email to Ray noting their conversation and asking about the status of the Brown claim. Neither Ray nor anyone else among Brown's counsel informed Ohio Security at this time of the existence of the

Underlying Lawsuit, its service upon Hurricane, Hurricane's failure to answer the complaint, and/or the entry of default against Hurricane in that matter.

40. On June 1, 2022, Brian Barnwell of the law firm of Rikard & Protopapas, LLC ("Barnwell") entered an appearance as additional counsel for Brown in the Underlying Lawsuit.

41. Upon information and belief, while Cannarella had not formally appeared as Brown's counsel in the Underlying Lawsuit, he continued to also represent Brown with regard to Brown's claim arising from the lawsuit. From this point on, "Brown's counsel" shall refer to Cannarella (including Ray), Mitchell, and/or Barnwell, individually and collectively.

42. Upon information and belief, at the time that he became involved in this matter, all of Brown's counsel were aware of Cannarella's (including Ray's) involvement in this matter as an attorney representing Brown.

43. On June 16, 2022, Brown's counsel submitted a proposed order to the court in the Underlying Lawsuit. At that time Brown's counsel did not inform Ohio Security of this filing.

44. On June 17, 2022, the court in the Underlying Lawsuit entered a new order entering default against Hurricane, but this time referring the Underlying Lawsuit to the Master-In-Equity for Lee County. At that time Brown's counsel did not inform Ohio Security of this filing.

45. On July 22, 2022, a representative of Ohio Security sent a letter to Cannarella following up on Ohio Security's repeated requests for any records/documentation supporting Brown's injuries/treatment and for a settlement demand. Ohio Security did not receive the requested information, nor was Ohio Security informed by Brown's counsel of the existence of the Underlying Lawsuit, its service upon Hurricane, Hurricane's failure to answer the complaint, and/or the entry of default against Hurricane in that matter.

46. On August 23, 2022, a representative of Ohio Security had a telephone conversation with Ray regarding the status of Brown's claim and settlement demand. Ray asked Ohio Security to make this inquiry in an email, and the Ohio Security representative immediately sent an email to Ray noting their conversation and asking about the status of the Brown claim. Neither Ray nor anyone else among Brown's counsel informed Ohio Security at this time of the existence of the Underlying Lawsuit, its service upon Hurricane, Hurricane's failure to answer the complaint, and/or the entry of default against Hurricane in that matter.

47. On November 4, 2022, a representative of Ohio Security sent an email to Ray requesting an update on Brown's injuries and treatment. Ray responded with an email indicating he would be happy to provide the requested update on the following Monday (which would be November 7, 2022). Ray did not provide the requested information on November 7, 2022 or anytime thereafter, nor did either Ray or anyone else among Brown's counsel inform Ohio Security at this time of the existence of the Underlying Lawsuit, its service upon Hurricane, Hurricane's failure to answer the complaint, and/or the entry of default against Hurricane in that matter.

48. On December 5, 2022, William J. Horvath, Esq. of the firm Turner Padget Graham & Laney, P.A. ("Horvath") sent a letter to Cannarella (delivered via email) informing Cannarella that Horvath had been hired to represent Hurricane in any lawsuit arising out of the Accident, specifically including any lawsuits brought by Brown. The stated purpose of this letter was to put Cannarella on formal notice of Horvath's representation of Hurricane for all purposes and specifically with regard to the requirements of Rule 5 of the South Carolina Rules of Civil Procedure.

49. The December 5, 2022, letter notifying Cannarella as to Horvath's representation of Hurricane was effective as to all of Brown's counsel.

50. Brown's counsel did not respond to Horvath's December 5, 2022 letter, nor did they inform Ohio Security at this time of the existence of the Underlying Lawsuit, its service upon Hurricane, Hurricane's failure to answer the complaint, and/or the entry of default against Hurricane in that matter.

51. On or about March 31, 2023, Brown's counsel filed a proposed order or some other filing with the court in the Underlying Lawsuit. Despite having been put on notice that Horvath represented Hurricane in any litigation arising from the Accident, this filing was not served on Horvath.

52. On or about April 13, 2023, Brown's counsel filed a proposed order or some other filing with the court in the Underlying Lawsuit. Despite having been put on notice that Horvath represented Hurricane in any litigation arising from the Accident, this filing was not served on Horvath. Additionally, Brown's counsel did not inform Ohio Security of this filing.

53. On April 14, 2023, a second order referring the Underlying Lawsuit to the Master-In-Equity for Lee County was entered in the Underlying Lawsuit. Despite having been put on notice that Horvath represented Hurricane in any litigation arising from the Accident, this filing was not served on Horvath. Additionally, Brown's counsel did not inform Ohio Security of this filing.

54. Upon information and belief, a damages hearing in the Underlying Lawsuit was scheduled for 10:00 a.m. on April 28, 2023, and Brown's counsel was provided with advance notice of this hearing.

55. Despite there having been no less than forty-three (43) separate communications by Ohio Security to Brown's counsel (seven (7) of which occurred after the Underlying Lawsuit had been filed), Browns' counsel did not inform Ohio Security of this damages hearing.

56. Upon information and belief, on April 26, 2023, Brown's counsel mailed letters to Hurricane and Horvath purporting to inform them of the 10:00 a.m. damages hearing scheduled for April 28, 2023.

57. Neither letter was actually delivered to either Hurricane or Horvath until late in the day on April 28, 2023, after the 10:00 a.m. damages hearing had been completed.

58. Upon learning—after the fact—of the April 28, 2023 damages hearing, Ohio Security learned for the first time from any source of the existence of the Underlying Lawsuit, its service upon Hurricane, the entry of a default against Hurricane, the referral to the Master-In-Equity, and the fact that a damages hearing had already been held. Prior to this time, despite having communicated with Brown's counsel no less than forty-three times, Ohio Security had no actual notice of the existence of the Underlying Lawsuit or of its service upon Hurricane.

59. On May 1, 2023, Brown's counsel submitted a proposed order to the court in the Underlying Lawsuit. Despite having been put on notice that Horvath represented Hurricane in any litigation arising from the Accident, this filing was not served on Horvath. Additionally, Brown's counsel did not inform Ohio Security of this filing.

60. On May 2, 2023, at 9:06 a.m. the court in the Underlying Lawsuit entered an order granting a default judgment against Hurricane in the amount of $3,800,000. (*See* **Exhibit B**, Order entered May 2, 2023 in Underlying Lawsuit).

61. The May 2, 2023 Order states that "Brown testified that his medical bills were $10,400." (**Exhibit B** at ¶ 22). This is the first and only information about Brown's injuries and/or treatment that Ohio Security had ever received despite at least forty-three separate (43) requests made by Ohio Security to Brown's counsel.

62.     Upon learning of the existence of the Underlying Lawsuit, Ohio Security directed Horvath (whom it had previously retained to represent Hurricane in any lawsuits that arise from the Accident) to defend Hurricane in the Underlying Lawsuit and seek to set aside the default.  On May 2, 2023, at 9:34 a.m. (twenty-eight (28) minutes after the default judgment for $3,800,000 had been entered) Horvath filed a motion to set aside the entry of default and any default judgment as to Hurricane.

63.     On May 2, 2023, Ohio Security also issued a reservation of rights letter to Hurricane, informing Hurricane that Ohio Security's defense of Hurricane in the Underlying Lawsuit was subject to Ohio Security's reservation of rights to disclaim or limit coverage in accordance with the Policy and South Carolina law, and specifically noting that Hurricane's failure to notify Ohio Security of the service of the Underlying Lawsuit violated the notice provisions of the Policy and substantially prejudiced Ohio Security's ability to defend Hurricane in that lawsuit.  (*See* 5/2/2023 Reservations of Rights Letter, attached as **Exhibit C**.)

64.     On May 31, 2023, Ohio Security sent a letter to Brown's counsel explaining that, despite Ohio Security's extensive attempts to communicate with Brown's counsel regarding the claim, prior to late in the day on April 28, 2023, Ohio Security lacked any actual notice of the existence of the Underlying Lawsuit, its service on Hurricane, Hurricane's subsequent default, and the holding of a damages hearing.  Ohio Security's May 31, 2023 letter requested that Brown voluntarily set aside the default judgment and the entry of default as to Hurricane and allow Hurricane to fully defend the Underlying Lawsuit.  Alternatively, the May 31, 2023 letter explained that Ohio Security was denying coverage for any amount over the statutorily required minimum liability limit of $25,000, and offered to pay this amount ($25,000) to Brown. (*See* May 31, 2023 Letter from Ohio Security to Brian Barnwell, Esq., attached as **Exhibit D**.)

65. Brown's counsel did not respond to Ohio Security's May, 2023 letter. Instead, on June 5, 2023, Brown's counsel sent a letter to Brian A. Autry, Esq. ("Autry"), who serves as Hurricane's independently retained defense counsel in the Underlying Lawsuit, rejecting Hurricane's request to set aside the default and offering to settle the $3,800,000 default judgment for "all applicable policy limits, which we understand to be $1,000,000." (*See* June 5, 2023 Letter from Brian Barnwell to Brian Autry, attached as **Exhibit E**). By the terms set forth in the June 5, 2023 letter, this settlement demand originally expired at 5:00 p.m. on June 9 2023, but was subsequently extended until 5:00 p.m. on June 12, 2023.

66. On June 9, 2023, having been informed of Brown's refusal to voluntarily set aside the default, Ohio Security sent a letter to Hurricane supplementing its May 2, 2023 reservation of rights letter and informing Hurricane that based on the lack of notice to Ohio Security of the Underlying Lawsuit and its service on Hurricane, and the substantial prejudice to Ohio Security's ability to defend Hurricane in the Underlying Lawsuit as a result of that lack of notice, Ohio Security is denying coverage for any amounts in excess of South Carolina statutorily required minimum liability limits of $25,000. (*See* June 9, 2023 Letter from Ohio Security to Hurricane, attached as **Exhibit F**).

## FOR A FIRST CAUSE OF ACTION

67. Ohio Security incorporates by reference the allegations set forth in the preceding paragraphs as if fully reinstated herein.

68. There is now a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

69. Hurricane breached the provisions of the Policy by failing to provide notice to Ohio Security of the Underlying Lawsuit and its service on Hurricane. Hurricane was apparently served with the Summons and Complaint in the Underlying Lawsuit and took no action to send the suit

papers to Ohio Security, otherwise inform Ohio Security that he had been served with a lawsuit, or otherwise defend itself in the Underlying Lawsuit.

70. Additionally, Ohio Security did not have actual notice of the service of the Underlying Lawsuit on Hurricane until late in the day on April 28, 2023—which was long after the default against Hurricane had been entered and after the damages hearing had been completed, and therefore S.C. Code Ann. § 38-77-142(B) does not preclude Ohio Security from denying coverage to Hurricane for the amount of the default judgment in excess of the statutorily required minimum liability limit of $25,000.

71. The breaches described above were material and have resulted in substantial prejudice to Ohio Security. Ohio Security was denied the opportunity to investigate or defend the Underlying Lawsuit on its merits with respect to liability and/or the damages claimed by Brown. Ohio Security was also denied the opportunity to seek relief for Hurricane from the mere entry of default prior to the default judgment and was denied the opportunity to provide counsel for Hurricane to defend at the damages hearing held on April 28, 2023. Additionally, Ohio Security has now been denied the opportunity to mediate this case or negotiate a settlement without the handicap of the default position and/or the default judgment.

72. Due to Hurricane's breaches and Brown's counsel's failure to otherwise provide any actual notice to Ohio Security of the Underlying Lawsuit, Ohio Security is entitled to a declaratory judgment declaring that Ohio Security's indemnification obligations and/or liability for the default judgment entered in the Underlying Lawsuit in favor of Brown and against Hurricane is limited to $25,000, which constitutes the statutory minimum liability limit under South Carolina law.

73. Additionally, due to Hurricane's breaches and Brown's counsel's failure to otherwise provide any actual notice to Ohio Security of the Underlying Lawsuit, Ohio Security is entitled to a declaratory judgment declaring that Ohio Security's Policy's limits are effectively reduced to the $25,000 statutory minimum liability limit under South Carolina law, such that Brown's counsel's June 5, 2023 time-limited settlement demand for $1,000,000 is not a demand within Ohio Security's policy limits.

74. This matter is ripe for declaratory judgment, and a prompt adjudication of the parties' rights and obligations with respect to the claims for coverage under the Ohio Security Policy would be of practical use to the parties.

WHEREFORE, Ohio Security requests that this Court issue a declaratory judgment that Ohio Security's duty to indemnify Hurricane as to the default judgment in the Underlying Lawsuit is limited to only the statutorily required minimum liability limits of $25,000, and any coverage under the Ohio Security Policy for the portion of the default judgment in excess of $25,000 has been properly denied due to Hurricane failing to comply with the Policy's Notice/Cooperation conditions and the lack of any actual notice to Ohio Security of the service of the Underlying Lawsuit upon Hurricane. Additionally, Ohio Security asks this Court for a declaratory judgment that the time limited settlement demand for $1,000,000 is not a demand within the policy limits of the Ohio Security Policy due to the proper denial of coverage in excess of $25,000. Finally, Ohio Security asks that the Court grant such other and further relief as the Court deems appropriate.

*(Signature page attached)*

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: *s/Brian P. Crotty*
    Brian P. Crotty
    Federal Bar No. 7445
    E-Mail: brian.crotty@nelsonmullins.com
    C. Mitchell Brown
    Federal Bar No. 5283
    E-Mail: mitch.brown@nelsonmullins.com
    Kelly L. Taylor
    Federal Bar No. 13625
    E-Mail: kelly.taylor@nelsonmullins.com
    1320 Main Street/ 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC 29201
    (803) 799-2000

*Attorneys for Ohio Security Insurance Company*

June 13, 2023